IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02421-CMA-CBS

MICHAEL P. MAROTTA,
          Plaintiff,

v.

CORTEZ, individually and in his official capacity as a Denver Police Officer,
BLACK, individually and in her official capacity as a Denver Police Officer,
ROCCO-MCKEEL, individually and in his official capacity as a Denver Police Officer,
THE DENVER POLICE DEPARTMENT,
THE CITY AND COUNTY OF DENVER, and
PATRICK SORAN, a private individual,
          Defendants.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

          This civil action comes before the court on:

(1)      "Defendants' Cortez's and Black's Motion to Dismiss All Claims Pursuant to Fed. R. Civ. P. 12(b)(6)" (filed April 6, 2009) (doc. # 59);

(2)      "Defendants Rocco-McKeel's and the City and County of Denver's Partial Motion to Dismiss Claims Pursuant to Fed. R. Civ. P. 12(b)(6)" (filed April 6, 2009) (doc. # 60);

(3)      "Defendant the Denver Police Department's Motion to Dismiss All Claims Pursuant to Fed. R. Civ. P. 12(b)(6)" (filed April 6, 2009) (doc. # 61);

(4)      "Defendant Patrick Soran's Motion to Dismiss Plaintiff's Fourth Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (filed April 7, 2009) (doc. # 64); and

(5)      Plaintiff Mr. Marotta's "Motion for Summary Judgment Pertaining to Defendant Soran" (filed May 18, 2009) (doc. # 80).

Pursuant to the Order of Reference dated November 12, 2008 (doc. # 10) and the

memoranda dated April 7, 2009 (doc. # 62), April 8, 2009 (doc. # 68), and May 20, 2009

(doc. # 82), these matters were referred to the Magistrate Judge.  The court has reviewed

the Motions, Mr. Marotta's Responses (filed April 10, 2009) (docs. # 70, # 71, # 72, and #

73), Defendants' Replies (filed April 27, 2009) (docs. # 75, # 77, # 78, and # 79), Defendant

Soran's Response (filed June 8, 2009) (doc. # 84), Mr. Marotta's Reply (filed June 11,

2009) (doc. # 85), the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.      Statement of the Case

Proceeding *pro se*, Mr. Marotta initiated this lawsuit on or about October 6, 2008 in the District Court for the City and County of Denver, bringing claims under Title 42 U.S.C. § 1983 for violations of his constitutional rights.  The action was removed to federal court, where Mr. Marotta's Fourth Amended Complaint ("FAC") (doc. # 39) was accepted on February 24, 2009.  Mr. Marotta brings six claims for relief in his FAC: (1) "Violation of Civil Right[ ] against Unlawful Search and Seizure" against all Defendants, (2) "Violation of Civil Right[ ] against Unlawful Loss of Liberty without Due Process" against all Defendants, (3) "Physical Abuse (violation of Fourth Amendment of the Constitution of the United States)" against Defendants Rocco-McKeel, the Denver Police Department, and the City and County of Denver, (4) "Harassment (Malicious Prosecution based upon violation of First, Fourth, Fifth and Fourteenth Amendments of the Constitution of the United States" against all Defendants except Soran, (5) "Emotional Distress (causation Outrageous Conduct in violation of First, Fourth, Fifth and/or Fourteenth Amendments of the Constitution of the Untied States" against all Defendants, and (6) "Legal and Other Expenses ("Malicious Prosecution based upon violation of First, Fourth, Fifth and/or Fourteenth Amendments of the Constitution of the United States" against all Defendants.  (*See* FAC (doc. # 39)).

Mr. Marotta's claims arise out of a history of legal actions involving him, his neighbors, and his Homeowners Association at 1200 Vine Street, Denver, Colorado.  (*See* Exhibits A - I to Motion to Dismiss (docs. # 59-2 through # 59-10)).  More specifically, Mr. Marotta's claims arise from two arrests, on March 23, 2007 and November 21, 2007, that

he alleges caused him injury.  (*See* FAC (doc. # 39) at ¶¶ 49-55, 57-61).[1]

"On March 23, 2007, Officer Cortez issued Plaintiff a Summons for Disturbing the Peace" based on a complaint "made on March 16, 2007."  (FAC (doc. # 39) at ¶ 26).  "Officer Cortez, who claims he was unable to serve Plaintiff on March 16, 2007, immediately sought and obtained an arrest warrant for Plaintiff on March 16, 2007."  (FAC (doc. # 39) at ¶ 27).  "On March 23, 2007 Officer Cortez crossed the threshold of Plaintiff's residence, grabbed Plaintiff out of Plaintiff's condominium unit and placed Plaintiff under arrest and then searched Plaintiff."  (FAC (doc. # 39) at ¶ 28).  "As a result of Officer Cortez issuing the summons, the prosecuting authority in the City and County of Denver, Colorado brought Disturbing the Peace charges pertaining to these allegations against the Plaintiff in the General Sessions Court of the City of Denver, Colorado in case number 07GS173351."  (FAC (doc. # 39) at ¶ 32).  "The resulting case against Plaintiff was subsequently dismissed by the City Attorney for insufficient evidence . . . ."  (FAC (doc. # 39) at ¶ 34).  "As a result of the criminal case having been filed, the Plaintiff sustained economic and non-economic damages, . . . ."  (FAC (doc. # 39) at ¶ 35).

Mr. Marotta called the police to his residence on November 21, 2007.  Mr. Marotta alleges that on that date, "Defendant Rocco-McKeel, an officer of the DPD, when responding to a call to the DPD by Plaintiff, crossed the threshold of Plaintiff's residen[ce],

---

[1]    Mr. Marotta alleges in his "Statement of Facts" that he was issued a summons on January 20, 2006.  (*See* FAC (doc. # 39) at pp. 7-8 of 23, ¶¶ 20-22).  Mr. Marotta bases his First and  Second Claims for Relief on two arrests on March 16, 2007 and November 21, 2007.  (*See* FAC (doc. # 39) at pp. 12-13, 14-15 of 23, ¶¶ 48-53, 57-61).  The Third Claim for Relief is based upon the November 21, 2007 arrest.  (*See id.* at p. 16 of 23).  Mr. Marotta bases his Fourth and Fifth Claims for Relief on the January 20, 2006 summons and the two arrests.  (*See id.* at pp. 17, 19 of 23, ¶¶ 72, 77-78).  As the court discussed with Mr. Marotta on February 17, 2009 (*see* audio recording of February 17, 2009 Status Conference), claims regarding the events on January 20, 2006 would be barred by the statute of limitations for section 1983 claims.   *See* Colo. Rev. Stat. § 13-80-102(g) (establishing a two-year limitation period for "all actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "all other actions of every kind for which no other period of limitation is provided"); *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir.1993) (applying § 13-80-102 to § 1983 claim).

grabbed Plaintiff and threw Plaintiff against an opposite wall with such force that his glasses fell off in order to affect [sic] an arrest."  (FAC (doc. # 39) at ¶ 36).  Mr. Marotta further alleges that "Plaintiff was brutally handcuffed by Defendant Rocco-McKeel" and that "while riding down in the elevator, Defendant Rocco-McKeel forcefully pushed Plaintiff against an elevator wall without provocation."  (FAC (doc. # 39) at ¶ 37).

Mr. Marotta further alleges that "[a]t the time of the arrest, Defendant Black, an officer of the DPD, executed an affidavit in which Defendant Black made false statements to justify an arrest."  (FAC (doc. # 39) at ¶ 41).  Mr. Marotta also alleges that "Defendant Soran knew the statements were false and still signed the police report and summons . . . ."  (FAC (doc. # 39) at ¶ 42).  "As a result of these false statements by Defendant Black and Defendant Soran signing the complaint which contained these false statements, the prosecuting authority in the City and County of Denver, Colorado brought Disturbing the Peace charges pertaining to these allegations against the Plaintiff in the General Sessions Court of the City of Denver, Colorado in case number 07GS962247."  (FAC (doc. # 39) at ¶ 43).  "The resulting case against Plaintiff, 07GS962247, was subsequently dismissed by the City Attorney."  (FAC (doc. # 39) at ¶ 45).  "As a result of the criminal case having been filed, the Plaintiff sustained economic and non-economic damages, . . ."  (FAC (doc. # 39) at ¶ 46).

II.     Defendants' Motions to Dismiss

A.      Standard of Review

Defendants have moved to dismiss Mr. Marotta's claims pursuant to Fed. R. Civ. P. 12(b)(6).[2]  Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."

---

[2]     Defendants Rocco-McKeel and the City and County of Denver do not move to dismiss Plaintiff's Third Claim for Relief against them at this time.

> In reviewing a motion to dismiss, this court must look for plausibility in the complaint.   Under this standard, a complaint must include enough facts to state a claim to relief that is plausible on its face.  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Corder v. Lewis Palmer School Dist. No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009) (internal quotation marks and citations omitted).  The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

1.    Defendant the Denver Police Department's Motion to Dismiss

The Denver Police Department ("DPD") is a department of the City and County of Denver created by the City's Charter.  *Nasious v. Littleton Police Dept.*, 2009 WL 734719, *4 (D. Colo. February 19, 2009) (citing Denver Charter Art. A9.1), *Report and Recommendation adopted in part*, 2009 WL 755927 (D. Colo. March 18, 2009).[3]  "A police department is merely a vehicle through which a city government fulfills its policing functions, and thus is not a proper Defendant in a civil lawsuit."  *Nasious*, 2009 WL 734719 at *4 (citations omitted).   *See also Stump v. Gates*, 777 F. Supp. 808, 815 (D. Colo. 1991) (police department does not exist as a separate legal entity independent of the City) (citation omitted).  The proper party to be named is the City and County of Denver, which Mr. Marotta has named.  Defendant DPD is appropriately dismissed because it is not an entity independent of the City and County of Denver and thus is not a proper party to this litigation.

2.    Defendant Soran's Motion to Dismiss and Plaintiff's Motion for Summary Judgment

a.    Color of State Law

Title 42 U.S.C. § 1983 provides a civil cause of action for individuals who are

---

[3]    A copy of this unpublished decision is attached to this Recommendation.

deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting "under color of law." *Adickes v. SH Kress & Co.*, 398 U.S. 144, 147, 150 (1970). To assert his claims under § 1983, Mr. Marotta must allege a deprivation of a federal or constitutional right by a person acting under color of state law. *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988). Section 1983 does not impose liability in the absence of action taken under color of state law. *Adickes*, 398 U.S. at 150. *See also American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful'"). If the conduct of Mr. Soran does not qualify as state action, then the inquiry into § 1983 liability ends. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotation marks and citation omitted). Purely private acts are not considered acts under color of state law unless that conduct is furthered by actual or purported state authority. *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995). *See also Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (court must determine whether private party's "conduct has sufficiently received the imprimatur of the State so as to make it 'state action' for purposes of the Fourteenth Amendment").

It is undisputed that Mr. Soran is a private citizen. (*See* Plaintiff's Response to Motion to Dismiss (doc. # 73) at ¶19). Mr. Marotta alleges that Mr. Soran is liable under § 1983 by "knowingly signing a false police report." (*See* FAC (doc. # 39) at ¶¶ 52, 61, 83). "A private individual does not engage in state action simply by availing herself of a state procedure." *Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000). An individual does not act under color of law merely by reporting an alleged crime to police officers who take action

thereon. *See Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009) ("Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken under color of law."); *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983) ("We know of no case in which the report of a state crime is action under color of state law under § 1983."); *Carey v. Continental Airlines, Inc.*, 823 F.2d 1402, 1404 (10th Cir.1987) (holding that complaint to police and citizen's arrest by airline employee does not constitute state action). A private citizen does not become a state actor just because he reports a crime and the police rely on his report to make an arrest. *See Taylor v. Nichols*, 558 F.2d 561, 564 (10th Cir.1977) ("The acts of filing a claim and testifying at trial do not constitute state action. These are private acts.").

Mr. Marotta argues that "[t]he case against Mr. Soran is predicated on the fact that Defendant Soran intentionally and knowing [sic] signed and filed a false police report containing that false probable cause statement . . . ." (*See, e.g.*, doc. # 73 at ¶¶ 2, 14, 18, 19, 21, 25; doc. # 85 at p. 6 of 9). However, "[t]he mere fact that a private party furnished information, *even if false*, is not sufficient to constitute joint activity with state officials to state an actionable claim under § 1983." *Lane v. Johnson*, 385 F. Supp. 2d 1146, 1151 (D. Kan. 2005) (emphasis added) (citation omitted). *See also American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. at 50 (private conduct, "no matter how discriminatory or wrongful," may not be redressed by a § 1983 claim); *Holdeman v. Consolidated Rail Corp.,* 649 F. Supp. 1188, 1196 (N.D. Ind. 1986) ("the mere furnishing of information by a private party to a law enforcement official, even if the information is false, is not sufficient to constitute joint activity with State officials in prohibited action or to state a claim against a private party under § 1983"). Mr. Marotta has not alleged facts sufficiently plausible to suggest that Mr. Soran was functioning in any capacity other than as a private actor. Even construing the allegations of the FAC in a light most favorable to Mr. Marotta, the court

concludes that he has not adequately alleged that Mr. Soran acted under color of state law. Mr. Soran is properly dismissed from the FAC for failure to state a claim against him. Based on the same analysis, Mr. Marotta's Motion for Summary Judgment against Mr. Soran also fails.

3.      Defendants Cortez, Black, Rocco-McKeel, and City and County of Denver's Motions to Dismiss

A.      Fifth Amendment

Mr. Marotta alleges "violation of the First, Fourth, Fifth and Fourteenth Amendments of the Constitution of the United States."  (*See* FAC (doc. # 39) at pp. 17, 18, 21 of 23 (Fourth, Fifth, and Sixth Claims for Relief); *see also* doc. # 39 at pp. 14-15 of 23 (Second Claim for Relief for violation of Fifth and Fourteenth Amendments)).  Mr. Marotta premises his Second and Sixth Claims on the arrests on March 23, 2007 and November 21, 2007. (*See id.*).  Mr. Marotta premises his Fourth and Fifth Claims on the summons on January 20, 2006 and the arrests on March 23, 2007 and November 21, 2007, that he alleges had no lawful basis.  (*See id.*).

To the extent that Mr. Marotta alleges violation of his Fifth Amendment rights, he fails to state a claim.  The Due Process Clause of the Fifth Amendment protects against due process violations by the federal government.  *See Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 461 (1952) (Fifth Amendment applies to and restricts only the Federal Government and not private persons).  *See also United States v. Balsys*, 524 U.S. 666, 700 (1998) (Stevens, J., concurring) ("Th [e] [Fifth Amendment] constrains the power of the Federal Government to deprive any person 'of life, liberty, or property, without due process of law,' just as the Fourteenth Amendment imposes comparable constraints on the power of the States.").  For purposes of a Fifth Amendment claim, Mr. Marotta has not identified a federal official or entity as a defendant; thus, Mr. Marotta has mistakenly identified the Fifth Amendment as a source of applicable law.  Mr. Marotta's claims pursuant to the Fifth

8

Amendment are properly dismissed with prejudice.

B.     Fourteenth Amendment

To the extent that Mr. Marotta alleges violation of his Fourteenth Amendment rights, he also fails to state a claim.  Mr. Marotta does not identify whether the alleged due process violation involves substantive or procedural due process rights.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, paper, and effects, against unreasonable searches and seizures, shall not be violated. . . ."[4]  Excessive force claims involving arrests and other "seizures" are governed by the Fourth Amendment, which secures the right against unreasonable seizures, and not the Fourteenth Amendment.  *Graham v. Connor*, 490 U.S. 386, 388 (1989) (where a plaintiff's rights are protected by a specific provision of the Constitution, such as the Fourth Amendment, then a Fourteenth Amendment claim for substantive due process cannot be brought).  In later opinions, the Supreme Court explained that *Graham*,

> does not hold that all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendments; rather, Graham simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.

*County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (quoting *United States v. Lanier*, 520 U.S. 259, 272, n. 7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.")).  *See also Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a  particular Amendment provides an explicit textual source of constitutional protection

---

[4]     The protections of the Fourth Amendment are made applicable to the states through the Fourteenth Amendment.  *Pierce v. Ohio Dept. of Rehabilitation and Corrections*, 284 F. Supp. 2d 811, 828 n. 16 (N.D. Ohio 2003).

against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (internal quotation marks and citation omitted).

If the Fourth Amendment, which specifically governs the standards of arrest, has not been breached, Mr. Marotta may not state a claim under the more general Fourteenth Amendment standard. Mr. Marotta may not argue that due process entitled him to any process greater than that guaranteed by the Fourth Amendment, particularly in this case, where the facts supporting each claim are identical. He may only argue violation of the Fourth Amendment standard of reasonableness. *See Micalizzi v. Ciamarra*, 206 F. Supp. 2d 564, 579 (S.D.N.Y. 2002) ("Claims arising from investigations for law-enforcement purposes, including a § 1983 claim premised on a person's arrest, are to be judged by the standards of the Fourth Amendment.") (citations omitted). Mr. Marotta has not alleged particular behavior that is prohibited by some constitutional provision other than the Fourth Amendment. Mr. Marotta's claims arise in the context of an arrest and alleged use of force, and are thus properly analyzed under the reasonableness standard of the Fourth Amendment, rather than the Fourteenth Amendment. As Mr. Marotta has mistakenly identified the Fourteenth Amendment as a source of applicable law, his claims pursuant to the Fourteenth Amendment are properly dismissed with prejudice.

C.    First Amendment

To the extent that Mr. Marotta mentions violation of the First Amendment, he has not set forth sufficient allegations to support such a claim. (*See* FAC (doc. # 39) at p. 8 of 23, ¶ 24, p. 17 of 23, ¶ 72). Mr. Marotta's bare allegations and the mere recitation of the First Amendment are insufficient to state a claim for relief. Further, the January 20, 2006 incident on which Mr. Marotta bases his First Amendment claim is outside the two-year limitations period for a § 1983 claim. *See Blake v. Dickason*, 997 F.2d at 750 (Colorado

law provides a two-year statute of limitations for claims brought pursuant to § 1983).

D.      Fourth Amendment

Mr. Marotta's First Claim for Relief for "Unlawful Search and Seizure" in violation of the Fourth Amendment arises from two arrests, on March 23, 2007 and November 21, 2007, that he alleges were unlawful. (*See* FAC (doc. # 39) at ¶¶ 49-55, 57-61). Defendants Cortez, Black, Rocco-McKeel, and the City and County of Denver move to dismiss Mr. Marotta's First Claim for Relief.

To maintain a claim for unlawful warrantless arrest, Mr. Marotta must demonstrate that his Fourth Amendment right to be free from unreasonable search and seizure has been violated. *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir.1996). The court must "analyze the constitutionality of a warrantless arrest under the probable cause standard." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (citations omitted). "A police officer may arrest a person without a warrant if he has probable cause to believe that person committed a crime." *Id.* (citation omitted). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.* (internal quotation marks and citations omitted).

When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is entitled to qualified immunity "if a reasonable officer could have believed that probable cause existed to arrest" the plaintiff. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). *See also Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). Probable cause requires only a probability of criminal activity, not a prima facie showing of

11

such activity.  *Illinois v. Gates*, 462 U.S. 213, 235 (1983).  Where no Fourth Amendment violation occurred because the officer possessed probable cause to arrest and charge the individual, "the inquiry ends and the officer is entitled to qualified immunity."  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).  "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity."  *Hunter*, 502 U.S. at 227  (Internal quotation marks and citation omitted).

Applying these principles to the instant case and accepting all well pled allegations in the FAC as true, the court concludes that Mr. Marotta has not alleged sufficient facts to state a claim that the Defendants could not have believed that probable cause existed.

The allegations in the FAC indicate that both arrests of Mr. Marotta were based on signed complaints by Mr. Marotta's neighbors.  (*See* FAC (doc. # 39) at p. 8 of 23, ¶ 26 ("On March 23, 2007 Officer Cortez issued Plaintiff a summons for Disturbing the Peace for using the stairwells in his condominium building for exercise.  The complainant cited noise created when opening the doors to enter the stairwell.  The Complaint had been made on March 16, 2007."); pp. 17-18 of 23, ¶ 72 ("It should be noted that Plaintiff had been visited on at least three (3) or four (4) previous occasions by officers of the Denver Police Department relative to Plaintiff's use of the stairs.  The complainant was always the same party, on all those occasions visiting officers, after being advised of what Plaintiff was doing and shown the 'crash fire doors,' advised Plaintiff to be careful not to open the doors so forcefully that they impacted the wall behind the doors. . . . No summons was ever issued except by Officer Cortez.");  *see also* Summons (doc. # 59-10)).[5]  Regarding the

---

[5]    On a motion to dismiss pursuant to Rule 12(b)(6), the court may consider materials in addition to the pleadings if such materials are public records or are otherwise appropriate for the taking of judicial notice.  Such items include orders, items appearing in the court record, and records filed in state court.  *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 n.1 (10th Cir. 2004); *Wyser-Pratte Management Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) (District Court may consider documents referred to in plaintiff's complaint and central to his claim, public records, matters of which a court may take judicial notice and decisions of governmental agencies) (citations omitted).

November 21, 2007 arrest, after the officers had left the premises, Mr. Marotta called the police back to the premises.  Mr. Marotta alleges that "Plaintiff had initiated the call to the Denver Police Department to report on the conduct of its officers when responding to an earlier call.  It was when responding to Plaintiff's call that the arrest was made. . . . Plaintiff was on probation at the time of the arrest.").  (*See* FAC (doc. # 39) at p. 19 of 23, ¶ 80). While Mr. Marotta alleges that the information in the affidavit was false, he alleges that the affidavit in support of the arrest stated that "(1) when Defendant Black was responding to a call from a complainant Patrick Soran at 1200 Vine Street, (2) that Plaintiff had exited his unit at that time, (3) and that Plaintiff was screaming in the hallway and advised to lower his voice and refused, (4) that Plaintiff approached officers with balled fists in a threatening ma[nn]er, (5) that Plaintiff refused to apeak to the officers in his unit when asked to do so, (6) began yelling louder and (7) was then placed under arrest" for Disturbing the Peace.[6]  (*See* FAC (doc. # 39) at p. 11 of 23, ¶ 41); *see also* doc. # 59-10).[7]

Victim complaints may alone form a basis of probable cause.  *See Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("We have previously held that police officers,

---

[6]  Denver Municipal Code, Sec. 38-89 Disturbance of the Peace, provides in part: (a) Generally. It shall be unlawful for any person to disturb or tend to disturb the peace of others by violent, tumultuous, offensive or obstreperous conduct or by loud or unusual noises or by unseemly, profane, obscene or offensive language calculated to provoke a breach of the peace. . . .

[7]  The statement of probable cause provided:

R/O responded to location on a dispatched call. R/O and complainant0 were talking when [Mr. Marotta] began screaming in the hallway at the R/O's and complainant.  R/O advised [Mr. Marotta] to lower his voice. [Mr. Marotta] refused and approached R/O's with balled fists in a threatening ma[nn]er stating "so you're going to take their side." [Mr. Marotta] then stated "you better watch your back. I will get you for this." R/O requested to speak to [Mr. Marotta] in his apartment so that his yelling wouldn't disturb the neighbors, he refused and began yelling louder. [Mr. Marotta] was then placed under arrest.

(*See* doc. # 59-10).

when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed."). *See also Weintraub v. Board of Education of City of New York*, 423 F. Supp. 2d 38, 53-54 (E.D.N.Y. 2006) (probable cause requirement is satisfied if the officer "received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth . . . The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed.") (internal quotation marks and citations omitted), *on reconsideration in part*, 489 F. Supp. 2d 209 (E.D.N.Y. 2007).  Here, the crime that formed the basis of the citizen complaint had just been committed or was being committed contemporaneously with the complaint, the victim signed a written complaint in person to the arresting officer, and the officers also witnessed Mr. Marotta's disruptive behavior.  The allegations contained in the statement of probable cause were derived from the independent observations of the responding officers during their investigation as well as the complainant's report.

The allegations of the FAC and matters of public record are sufficient to establish probable cause of a violation of Denver Municipal Code, Sec. 38-89 Disturbance of the Peace.  *See Woods v. City of Chicago*, 234 F.3d 979, 997 (7th Cir. 2000) ("We have found probable cause to arrest based upon uncorroborated citizen complaints . . . .") (citing *Spiegel v. Cortese*, 196 F.3d 717, 724-26 (7th Cir. 2000) (finding that the defendant police officer had probable cause to arrest the plaintiff even though the victim had waited nearly a month to make a report, and even though there were inconsistencies in the victim's report as well as evidence suggesting that the victim's charge against the plaintiff was retaliatory) and *Gerald M. v. J. Conneely*, 858 F.2d 378, 380-81 (7th Cir. 1988) (upholding district court's grant of summary judgment for police officer in a § 1983 case, reasoning that the uncorroborated complaint of a ten-year-old child that his bicycle had been stolen by two other children was sufficient to provide the officer with probable cause to arrest the accused children, even though the arresting officer knew of a long-standing grudge between the

14

victim's family and the family of the accused children); *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir.1997) (finding probable cause where police officer chose to believe claimed victim's version of a fight based on visible injuries); *Pravda v. City of Albany, N.Y.*, 956 F.Supp. 174, 184-85 (N.D.N.Y. 1997) (probable cause for arrest existed based on unsworn allegation of putative victim at scene, which was consistent with police officer's observation of putative victim's physical injury); *Mangieri v. Clifton*, 29 F.3d 1012, 1017-18 (5th Cir. 1994) (granting qualified immunity to officers who, when responding to a noise complaint, personally witnessed a protester using a bullhorn at full volume and observed that these actions had an effect on bystanders); *Miloslavsky v. AES Engineering Soc., Inc.*, 808 F.Supp. 351 (S.D.N.Y.1992) (finding probable cause to arrest § 1983 plaintiff who was creating a public disturbance where witnesses immediately reported the plaintiff's behavior and where police also witnessed plaintiff's disruptive behavior).

Mr. Marotta filed a civil case in Denver County Court against Mr. Soran based on the November 2007 incident.  (*See* doc. # 59-2).  In the trial of that matter, Mr. Marotta testified that he was mad, "I had a raised voice, . . . when I get mad my voice just goes up," and that "I vented to them . . . ." (*See* doc. # 59-11). Mr. Marotta testified that Officers Black and Rocco-McKeel were trying to get him to agree that he would leave Mr. Soran alone. (*See* doc. # 59-12). Mr. Marotta testified that during this incident he was yelling at Mr. Soran, that he was yelling loudly enough that Mr. Soran could hear him in his apartment behind a closed door, and that he specifically "threatened I'm was going to get you back." (*See* docs. # 59-13, # 59-14); *see also* doc. # 84-2 at pp. 5, 8-9, 11-14 of 19).  Mr. Marotta further testified that "I was pissed" and "I gave it [attitude] right back" to Officers Black and Rocco-McKeel. (*See* doc. # 59-14).   Thus, Mr. Marotta's own testimony substantially corroborates the veracity of the statement of probable cause.  Mr. Soran also testified that the statement of probable cause was substantially accurate. (*See* doc. # 84-2 at p. 19 of 19).  Based on the allegations of the FAC and matters of public record, Mr. Marotta has not

stated a claim for violation of the Fourth Amendment.  Thus, Defendants Cortez, Black, and Rocco-McKeel are entitled to qualified immunity and Mr. Marotta's First Claim for Relief is properly dismissed as to all Defendants.[8]

E.      Fourth Claim for "Harassment (Malicious Prosecution)" and Sixth Claim for "Legal and Other Expenses"

Mr. Marotta's Fourth and Sixth Claims for Relief allege "Harassment (Malicious Prosecution)" and "Legal and Other Expenses (Malicious Prosecution . . .)" based on the same allegations raised in his other claims.  (*See* FAC at pp. 17, 21 of 23).  There are no independently recognized claims for "harassment" or "legal and other expenses."[9]  To the extent that Mr. Marotta is alleging a claim for malicious prosecution, he fails to state a claim upon which relief can be granted.

While Mr. Marotta may pursue a claim of malicious prosecution under § 1983, his only constitutional remedy is under the Fourth Amendment.  *Albright v. Oliver*, 510 U.S. at 271-75.  The absence of probable cause to arrest is an essential element of a Fourth Amendment malicious prosecution claim under § 1983.  *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).  *See also Walford v. Blinder, Robinson & Co.*, 793 P.2d 620, 623 (Colo. App. 1990) (one of the essential elements of a malicious prosecution claim in

---

[8]      Without a predicate constitutional harm inflicted by an officer, no liability exists for the City and County of Denver.  *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004) (citation omitted).

[9]      Colorado law does provide proscriptions for harassment, in the form of the criminal statutes "Harassment – stalking," Colo. Rev. Stat. § 18-9-111, and "Bias-motivated crimes," Colo. Rev. Stat. § 18-9-121.  Mr. Marotta does not have standing to bring claims under either of these criminal statutes or Title "18 U.S.C. 323" (*see* FAC at p. 3 of 23, ¶ 8) because these criminal statutes do not expressly provide a private cause of action and he has not made allegations that relate to these statutes.  *See generally, Diamond v. Charles*, 476 U.S. 54, 64-65 (1986) (holding that private citizens cannot compel enforcement of criminal law);  *Winslow v. Romer*, 759 F. Supp. 670, 673 (D. Colo. 1991) ("private citizens generally have no standing to institute criminal proceedings").
Mr. Marotta's request for "Legal and Other Expenses" is not a claim for relief at all, but rather a category of damages.

Colorado is that there was no probable cause for the charges against the plaintiff) (citations omitted).  The court has determined, above, that Mr. Marotta has not sufficiently alleged that probable cause did not exist for his arrests.  Thus, Mr. Marotta has not sufficiently alleged a plausible claim for malicious prosecution.

F.    Fifth Claim for "Emotional Distress (causation Outrageous Conduct. . . .)"

Mr. Marotta's Fifth Claim for Relief alleges "Emotional Distress."  (*See* FAC at p. 18 of 23).  There is no legally recognized independent claim for "emotional distress."  To the extent that Mr. Marotta may be alleging a claim for intentional infliction of emotional distress or outrageous conduct under Colorado law, the court must initially determine as a matter of law the threshold issue of whether a plaintiff has alleged conduct that is sufficiently outrageous.  *See Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665-66 (Colo. 1999) (describing this tort as "intentional infliction of emotional distress by outrageous conduct").  The trial court is initially responsible for determining whether reasonable persons could differ on the question whether conduct is outrageous.  *English v. Griffith*, 99 P. 3d 90, 93 (Colo. App. 2004) (citation omitted).  "Where it is clear to the court that the conduct complained of cannot be considered as rising to the egregious standard required, a claim for outrageous conduct is properly dismissed."  *Shackelford v. Courtesy Ford, Inc.*, 96 F. Supp. 2d 1140, 1146 (D. Colo. 2000).

While many plaintiffs believe that defendants' conduct has been outrageous, the tort of intentional infliction of emotional distress is extremely limited.  "Outrageous conduct" is defined as conduct that is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community."  *Culpepper v. Pearl Street Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994) (quoting *Destefano v. Grabrian*, 763 P.2d 275, 286 (Colo. 1988)).  *See also Riske v. King Soopers*, 366 F.3d 1085, 1089 (10th Cir. 2004) (same) (internal

17

quotation marks and citations omitted);   *Cocoran v. Sanner*, 854 P.2d 1376, 1381 (Colo. App. 1993) ("To prevail on a claim for outrageous conduct, a plaintiff must establish that the defendants, by extreme and outrageous conduct, intentionally or recklessly caused him or her severe emotional distress.");   CJI-Civ. 3d 23:1.

> A person acts with intent to cause severe emotional distress when he engages in conduct with the purpose of causing severe emotional distress to another person, or he knows that his conduct is certain or substantially certain to have that result.   A person acts recklessly in causing severe emotional distress in another if, at the time of the conduct, he knew or reasonably should have known that there was a substantial probability that his conduct would cause severe emotional distress to the other person.

*Culpepper*, 877 P.2d at 882 (citation omitted).   The tort of intentional infliction of emotional distress "contemplates an extreme level of independently ascertainable misconduct from which the 'ineluctable conclusion' is the calculated or reckless infliction of severe mental suffering."   *Visor v. Sprint/United Management Co.*, 965 F. Supp. 31, 33 (D. Colo. 1997) (*quoting Gard v. Telectronics Pacing Sys., Inc.*, 859 F. Supp. 1349, 1354 (D. Colo. 1994).

Mr. Marotta's allegations are merely conclusory and do not state a claim for intentional infliction of emotional distress.   While Mr. Marotta emphasizes his emotional distress, he merely conclusorily alleges that Defendant Cortez' conduct was outrageous. (*See, e.g.*, FAC at p. 20 of 23, ¶¶ 79, 81, 82 ("Ask any twelve (12) 'reasonable' men if such conduct was outrageous and I would expect a majority if not all to answer in the affirmative.")).   Mr. Marotta fails to show how his "general allegations establish the essential elements of a claim for outrageous conduct" or to describe "specific acts by [Defendants] entitling him to relief."   *Houston v. Mile High Adventist Academy*, 872 F. Supp. 829, 835 (D. Colo. 1994).   Mr. Marotta's allegations, even accepted as true, do "not rise to the level of conduct which may be characterized as 'atrocious and utterly intolerable in a civilized community.' "   *Hewitt v. Pitkin County Bank and Trust Co.*, 931 P.2d 456, 459 (Colo. App. 1995).   As the alleged conduct of Defendants does not sustain a plausible claim for intentional infliction of emotional distress, the Fifth Claim for Relief is properly dismissed.

18

Accordingly, IT IS RECOMMENDED that:

1.      "Defendants' Cortez's and Black's Motion to Dismiss All Claims Pursuant to Fed. R. Civ. P. 12(b)(6)" (filed April 6, 2009) (doc. # 59) be GRANTED and Defendants Cortez and Black be dismissed from this civil action for failure to state a claim upon which relief can be granted.

2.      "Defendants Rocco-McKeel's and the City and County of Denver's Partial Motion to Dismiss Claims Pursuant to Fed. R. Civ. P. 12(b)(6)" (filed April 6, 2009) (doc. # 60) be GRANTED and Defendants Rocco-McKeel and the City and County of Denver be dismissed from the First, Second, Fourth, Fifth and Sixth Claims for Relief for failure to state a claim upon which relief can be granted.

3.      "Defendant the Denver Police Department's Motion to Dismiss All Claims Pursuant to Fed. R. Civ. P. 12(b)(6)" (filed April 6, 2009) (doc. # 61) be GRANTED and Defendant the Denver Police Department be DISMISSED from this civil action with prejudice as it is not a suable entity.

4.      "Defendant Patrick Soran's Motion to Dismiss Plaintiff's Fourth Amended Complaint  Pursuant to Fed. R. Civ. P. 12(b)(6)" (filed April 7, 2009) (doc. # 64) be GRANTED and Defendant Soran be dismissed from this civil action with prejudice for lack of action under color of state law.  Because Mr. Marotta's claims against Mr. Soran have no basis in law or in fact, Mr. Soran may seek costs and attorney fees pursuant to law.

5.      Plaintiff Mr. Marotta's "Motion for Summary Judgment Pertaining to Defendant Soran" (filed May 18, 2009) (doc. # 80) be DENIED.

6.      In summary, the First, Second, Fourth, Fifth, and Sixth Claims for Relief be DISMISSED, Defendants Cortez, Black, the Denver Police Department, and Patrick Soran be DISMISSED, and this civil action proceed against Defendants Rocco-McKeel and the

City and County of Denver on the Third Claim for Relief only.

Further, IT IS ORDERED that after a ruling on this Recommendation by the District Judge, the court will set a Scheduling Conference as to the Third Claim for Relief against Defendants Rocco-McKeel and the City and County of Denver.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980

F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 3rd day of November, 2009.

BY THE COURT:


    s/Craig B. Shaffer
United States Magistrate Judge

21