IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02421-WJM-CBS

MICHAEL P. MAROTTA,
        Plaintiff,
v.

ROCCO-MCKEEL, individually and in his official capacity as a Denver Police Officer, and
THE CITY AND COUNTY OF DENVER,
        Defendants.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on Defendants Rocco-McKeel's and the City
and County of Denver's ("Denver") "Combined Summary Judgment Motion and Brief" (filed
October 28, 2010) (Doc. # 154).  Pursuant to the Order of Reference dated November 12,
2008 (doc. # 10) and the memorandum dated October 29, 2010 (Doc. # 155), this matter
was referred to the Magistrate Judge.  The court has reviewed the Motion, Mr. Marotta's
Response (filed November 16, 2010) (Doc. # 158), Defendants' Reply (filed November 24,
2010) (Doc. # 160), the exhibits, the affidavit, the entire case file, and the applicable law
and is sufficiently advised in the premises.


I.      Statement of the Case

        Proceeding *pro se*, Mr. Marotta initiated this lawsuit on or about October 6, 2008 in
the District Court for the City and County of Denver, bringing claims under Title 42 U.S.C.
§ 1983 for alleged violations of his constitutional rights.  The action was removed to federal
court, where Mr. Marotta's Fourth Amended Complaint ("FAC") (Doc. # 39) was accepted
on February 24, 2009.  Mr. Marotta brought six claims for relief in his FAC against six
Defendants.  (*See* FAC (Doc. # 39)).  On February 16, 2010, District Judge Arguello
dismissed all Defendants except Rocco-McKeel and Denver and all claims except the Third

Claim for Relief.  (*See* Doc. # 98).

The Third Claim for Relief against Defendants Rocco-McKeel and Denver arises from the arrest of Mr. Marotta on November 21, 2007 at 1200 Vine Street, Denver, Colorado.  (*See* FAC (Doc. # 39) at ¶¶ 36-37, 65-68).  The Third Claim for Relief is entitled "Physical Abuse (violation of Fourth Amendment of the Constitution of the United States)." (*See id.* at p. 16 of 23).   Mr. Marotta alleges that on that date, he "was abused by Defendant Rocco-McKeel both at the time of his arrest (thrown across the hallway) and subsequent to the arrest while in the elevator (shoved against the elevator wall).  Plaintiff was also brutally handcuffed so tightly by Defendant Rocco-McKeel to the effect that he now has a scar on his right wrist."  (FAC (Doc. # 39) at ¶ 66;   *see also* ¶¶ 36-37). Defendant Rocco-McKeel moves for summary judgment on the Third Claim for Relief based on qualified immunity.  Defendant Denver moves for summary judgment on the Third Claim for Relief based on Mr. Marotta's failure to demonstrate municipal liability.


II.     Standard of Review

Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56.  Summary judgment is proper "when there is no genuine dispute as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> . . . Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.
> A fact is material if it pertains to an element of a claim or defense; a factual dispute is genuine if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. The court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.
> The analysis to be applied on a motion for summary judgment differs depending on whether the moving party is also the party with the burden of proof at trial. Where, as here, the non-movant bears the burden of proof at trial, the non-movant must point to specific evidence establishing a genuine issue of material fact with regard to each challenged element.

*Allen v. Reynolds*, 2011 WL 2174424 * 1-2 (D. Colo. June 3, 2011) (internal quotation

marks and citations omitted).

Defendant Rocco-McKeel raises the defense of qualified immunity.   Whether a defendant is entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).  *See also Gonzales v. Duran*, 590 F.3d 855, 859 (10th Cir. 2009) (Qualified immunity is "almost always" a question of law.) (citation omitted).  "[W]e review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions."  *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (internal quotation marks and citation omitted).   "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established."  *Martinez*, 563 F.3d at 1088 (citation omitted).  Only if Mr. Marotta satisfies both of these prongs will the burden shift to Defendant Rocco-McKeel to assume the normal burden of showing that there are no disputed material facts and that he is entitled to judgment as a matter of law.  *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008). If "the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995).  *See also Wilder*, 490 F.3d at 813 ("If the [defendant]'s conduct did not violate a constitutional right, the inquiry ends and the [defendant] is entitled to qualified immunity.") (citation omitted). While it may be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, the order of those analytical steps is not  mandatory.  *See Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818 (2009) (overruling *Saucier v. Katz*, 533 U.S. 194 (2001)).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule

applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Hall*, 935 F.2d at 1110 n. 3 (citations omitted). However, the court cannot be a pro se litigant's advocate. *Yang v. Archuleta*, 525 F. 3d 925, 927 n. 1 (10th Cir. 2008).

III.    Analysis

Section 1983 creates a cause of action where a  "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution."  42 U.S.C. § 1983.   Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).  *See also Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) ("In order to successfully state a cause of action under section 1983, [Mr. Marotta] must allege . . . the deprivation of a federal right. . . .") (internal quotation marks and citation omitted).

The constitutional right at issue is the Fourth Amendment protection against the use of unreasonable force upon an individual who has been seized or arrested.  *See Graham v. Connor*, 490 U.S. 386, 388-95 (1989) ("[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard. . . .").[1]  *See also Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010) (because the Fourth Amendment protects against "unreasonable searches and seizures" and pertains to the events leading up to and including an arrest of a citizen previously at liberty, excessive force claims arising during this period are generally reviewed under a relatively exacting "objective reasonableness"

_____

[1]    The protections of the Fourth Amendment are made applicable to the states through the Fourteenth Amendment.  *Marshall v. Columbia Lea Regional Hosp.*, 345 F. 3d 1157, 1171 (10th Cir. 2003).

standard).   Mr. Marotta alleges that Defendant Rocco-McKeel violated the Fourth Amendment "objective reasonableness standard" by using excessive force to arrest him. (*See* Doc. # 39 at ¶ 66) (internal quotation marks omitted).

"[C]ourts have long recognized that the reasonableness of a seizure depends not just on why or when it is made, but also on how it is accomplished." *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) (citation omitted).

> The touchstone of the reasonableness inquiry in an excessive force claim, as in any other claim arising out of the Fourth Amendment, is whether the officers' actions are objectively unreasonable. The inquiry focuses not on the officers' particular motivations, nor on the arrestee's subjective perception of the intrusion, but on whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them.

*Id.* (internal quotation marks and citation omitted)

"The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396.  "In determining whether a use of force is reasonable under the Fourth Amendment, we balance the nature and quality of the encroachment on the individual's Fourth Amendment interests against the government's countervailing interests." *Lundstrom v. Romero*, 616 F.3d 1108, 1126 (10th Cir. 2010) (citation omitted). But "we are mindful that the Fourth Amendment does not require [police] to use the least intrusive means in the course of a detention, only reasonable ones." *Fisher*, 584 F.3d at 894 (internal quotation marks and citation omitted).

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. And we take seriously that this calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.
> The Supreme Court has delineated three, non-exclusive factors relevant to our excessive force inquiry: [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.

*Fisher*, 584 F.3d at 894 (internal quotation marks and citations omitted)).

A.     Defendant Rocco-McKeel

The court now considers Defendants' Motion regarding Mr. Marotta's Third Claim for Relief that Defendant Rocco-McKeel used excessive force in arresting him by pulling him from his unit into the hallway, turning him against the wall in the elevator, and handcuffing him too tightly.

It is undisputed that police officers were called to Mr. Marotta's residence at 1200 Vine Street in Denver twice on November 21, 2007.  (*See* Deposition of Michael Marotta, Exhibit A to Motion (Doc. # 154-1) at pp. 10-11 of 36;  Affidavit of Denver Police Officer Nicholas Rocco-McKeel, Exhibit B to Motion (Doc. # 154-2) ¶ 2;  Doc. # 158 at p. 2 of 35). After the officers left, Mr. Marotta called the police back to the premises. (*See* Doc. # 154-1 at pp. 12-13 of 36;  FAC (Doc. # 39) at ¶ 36;  *see also* FAC (Doc. # 39) at p. 19 of 23, ¶ 80 (alleging that "Plaintiff had initiated the call to the Denver Police Department to report on the conduct of its officers when responding to an earlier call.  It was when responding to Plaintiff's call that the arrest was made. . . . Plaintiff was on probation at the time of the arrest.").  Defendant Rocco-McKeel was present at both calls.  (*See* Doc. # 154-1 at pp. 10-11 of 36;  Doc. # 154-2 at ¶ 2;  Doc. # 158 at p. 2 of 35).

Mr. Marotta does not dispute that he was expecting a police officer to come to his residence in response to his call to the police station.  (*See* Doc. # 154-1 at p. 13 of 36; Doc. # 158 at p. 2 of 35).  Defendant Rocco-McKeel was one of the officers who responded to Mr. Marotta's call.  (*See* Doc. # 154-1 at p. 14 of 36;  Doc. # 158 at p. 2 of 35).  It is undisputed that the officers knocked on Mr. Marotta's door and he opened the door.  (*See* Doc. # 154-1 at pp. 13-14 of 36;  Doc. # 154-2 at ¶ 4;  Doc. # 158 at p. 2 of 35). Defendant Rocco-McKeel "advised Plaintiff he was being placed under arrest" and asked him to step out of his unit.  (*See* Doc. # 154-1 at p.15 of 36;  Doc. # 154-2 at ¶ 4).  It is undisputed that Mr. Marotta said "No."  (*See* Doc. # 154-1 at p. 15 of 36;  Doc. # 154-2 at ¶ 4;  doc. # 158 at p. 2 of 35).  It is undisputed that Defendant Rocco-McKeel then grabbed Mr. Marotta's

wrist and pulled him out of the door, across the hall and into the wall.  (*See* Doc. # 154-1 at p. 15 of 36;  Doc. # 154-2 at ¶ 7;  Doc. # 158 at p. 2 of 35).  Mr. Marotta does not dispute that Defendant Rocco-McKeel used a single pulling motion to pull Mr. Marotta out of his unit and did not strike him in any way.  (*See* Doc. # 154-1 at pp. 35-36 of 36 ("I can't tell you exactly what happened.  All I know is I was in my unit at one point.");  Doc. # 158 at p. 2 of 35).  Mr. Marotta suffered no bruises, cuts, or other injury from hitting the wall.  (*See* Doc. # 154-1 at pp. 17-18 of 36).  Defendant Rocco-McKeel handcuffed Mr. Marotta.  (*See id.*).  Mr. Marotta's reading "glasses popped off" and Officer Black placed them back on his face. (*See* Doc. # 154-1 at pp. 15-16 of 36;  doc. # 158 at p. 2 of 35).

Defendant Rocco-McKeel walked with Mr. Marotta to the elevator, "using the handcuffed hands as a method of control."  (*See* Doc. # 154-2 at ¶ 10;  Doc. # 154-1 at p. 22 of 36).  Defendant Rocco-McKeel faced Mr. Marotta against the elevator wall to maintain appropriate control.  (*See* Doc. # 154-2 at ¶ 10).  When Mr. Marotta attempted to turn talk to Officer Nyugen, Defendant Rocco-McKeel turned him back to face the elevator wall. (*See* Doc. # 154-2 at ¶¶ 11-13;  Doc. # 154-1 at pp. 22, 24-25 of 36).  Mr. Marotta was transported to the jail and transferred to the custody of the Denver Sheriff's Department. (*See* Doc. # 154-2 at ¶ 15;  Doc. # 154-1 at p. 23 of 36).

It is undisputed that Mr. Marotta did not seek medical treatment at the jail or later as a result of the events on November 21, 2007.  (*See* Deposition of Michael Marotta, Exhibit A to Motion (Doc. # 154-1) at pp. 5, 8-9 of 36;  Doc. # 158 at p. 2 of 35).  It is undisputed that Mr. Marotta has no physical impairment, suffered no psychological injury, and suffered no economic damages resulting from the events on November 21, 2007.  (*See* Doc. # 154-1 at pp. 6-7, 9, 26-27 of 36).  Mr. Marotta does not dispute that the events of November 21, 2007 did not affect his ability as an advanced skier.

The court evaluates the non-exclusive factors relevant to excessive force.  *Fisher*, 584 F.3d at 894 (internal quotation marks and citations omitted)).  First, Mr. Marotta was

charged with Disturbing the Peace, a violation of section 38-89 of the Denver Municipal Code, a minor criminal offense.[2] (*See* FAC (Doc. # 39) at ¶ 43). Second, there is no indication in the record that Mr. Marotta actively resisted or attempted to evade seizure by flight. Third, it is undisputed that Mr. Marotta refused the police officers' request that he exit his unit.

In evaluating an excessive force claim, a court must consider officer safety concerns. *Graham*, 490 U.S. at 396. Mr. Marotta was demonstrably angry the first time the officers came to his address. (*See* Doc. # 154-2 ¶ 3; Doc. # 154-1 at pp. 30-31 of 36). Mr. Marotta testified in a civil trial based on the November 21, 2007 incident that he was angry at the time. "I had a raised voice, . . . when I get mad my voice just goes up," and "I vented to them . . . ." (*See* Doc. # 59-2; Doc. # 59-11). Mr. Marotta testified that he was yelling loudly enough that his neighbor could hear him in his apartment behind a closed door, and that he specifically "threatened I'm was going to get you back." (*See* Docs. # 59-13, # 59-14); *see also* Doc. # 84-2 at pp. 5, 8-9, 11-14 of 19). Mr. Marotta further testified that "I was pissed" and "I gave it [attitude] right back" to Officers Black and Rocco-McKeel. (*See* Doc. # 59-14).

The evidence shows that Mr. Marotta was overtly angry and uncooperative on both occasions that the police responded to his residence on November 21, 2007.[3] Mr. Marotta called the police to return to the premises and expected to see them, but refused the officers' request to step out of his unit. Defendant Rocco-McKeel witnessed Mr. Marotta's

---

[2] Denver Municipal Code, Sec. 38-89 Disturbance of the Peace, provides in part: (a) Generally. It shall be unlawful for any person to disturb or tend to disturb the peace of others by violent, tumultuous, offensive or obstreperous conduct or by loud or unusual noises or by unseemly, profane, obscene or offensive language calculated to provoke a breach of the peace. . . .

[3] Denver Police officers have been called to Mr. Marotta's residence on numerous occasions other than November 21, 2007. (*See, e.g.,* FAC (Doc. # 39) at pp. 7-9 of 23).

disruptive behavior during the first call and found suspicious his refusal to cooperate with the request to step out of his unit. (*See* Doc. # 154-2 at ¶¶ 3, 6). *See Segura v. Jones*, 259 Fed. Appx. 95, 102 (10th Cir. Dec. 17, 2007) (knowledge that suspects had been uncooperative necessarily informs officer as to how he should proceed in acting towards suspects). Defendant Rocco-McKeel "asked Plaintiff to step out of his unit [ ] for safety reasons and to effect the arrest in an open area away from any possible weapons inside the unit." (*See* Doc. # 154-2 at ¶ 5). Mr. Marotta acknowledged that the police officers may have been concerned about how many people were in the unit. (*See* Doc. # 154-1 at p. 18 of 36). Based upon all of the information available, it was reasonable under the circumstances for Defendant Rocco-McKeel to conclude that Mr. Marotta may have posed a threat to the safety of the officers or the other building residents and to promptly gain physical control over Mr. Marotta and place him under arrest. *See Cortez v. McCauley*, 478 F.3d 1108, 1128-30 (10th Cir. 2007) ("We have little difficulty concluding that a small amount of force, like grabbing Rick Cortez and placing him in the patrol car, is permissible in effecting an arrest under the Fourth Amendment.") (citations omitted).

In the elevator, Mr. Marotta turned to speak to Officer Nyugen. Defendant Rocco-McKeel abruptly turned Mr. Marotta back toward the wall of the elevator. (*See* CD Video from Elevator, Exhibit C to Motion (Doc. # 154-3; Doc. # 157)). It is undisputed that Mr. Marotta suffered no injury from the ride in the elevator. (*See* Doc. # 154-1 at p. 25 of 36). The video depicts the entire ride in the elevator. (*See* Doc. # 154-3). Viewing the entire record and the facts as depicted by the videotape, the court concludes that Defendant Rocco-McKeel's conduct in the elevator does not constitute a violation the Fourth Amendment. *See Graham*, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."); *Scott v. Harris*, 550 U.S. 372, 378-81 (2007) (lower court "should have viewed the facts in the light depicted by the videotape").

As to Mr. Marotta's allegation of tight handcuffs, "the summary judgment record presents too little evidence of any actual injury." *Cortez*, 478 F.3d at 1129.  While proof of physical injury manifested by "visible cuts, bruises, abrasions or scars" is not an essential element of an excessive force claim, the absence of injury in the context of the totality of the circumstances may suggest the absence of excessive force. *Cortez*, 478 F.3d at 1129 n. 24.  "[A] claim of excessive force requires some actual injury that is not *de minimis*, be it physical or emotional." *Cortez*, 478 F.3d at 1129.

It is undisputed that Mr. Marotta had a rollerblading accident in August 2007, resulting in a cut to his right wrist, a scab or scar, and heightened sensitivity. (*See* Doc. # 154-1 at pp. 19-21 of 36).  Mr. Marotta contends that as a result of the handcuffs, a scab he had since August was scraped off and reopened, resulting in a scar. (*See* Doc. # 154-1 at p. 20 of 36 ("there was also a cut on my right wrist and, . . . as a result of him putting the handcuffs as tight as he did, it scraped it off and reopened it, but that's why probably, from being aggravated a second time around, that I would up with a scar."); *see also* p. 7 of 36 ("It's not much, but it's there.")).  It is undisputed that Mr. Marotta received no injury to his left wrist while handcuffed. (*See* Doc. # 154-1 at p. 21 of 36;  Doc. # 158 at p. 2 of 35).  It is undisputed that Mr. Marotta did not seek medical treatment at the jail or later as a result of the events on November 21, 2007. (*See* Doc. # 154-1 at pp. 5, 8-9 of 36;  Doc. # 158 at p. 2 of 35).  It is undisputed that Mr. Marotta has no physical impairment resulting from the events on November 21, 2007. (*See* Doc. # 154-1 at pp. 6-7, 9 of 36).  The court concludes that Mr. Marotta's evidence of injury is insufficient, as a matter of law, to support an excessive force claim based on the use of handcuffs. *Cortez*, 478 F.3d at 1129.  *See also Hannula v. City of Lakewood*, 907 F.2d 129, 132 (10th Cir.1990) (analyzing a tight handcuffing claim under substantive due process standard and holding that, for purposes of qualified immunity, the plaintiff had not shown the violation of a clearly established right, given a lack of evidence of physical injury or "apparent physical damage to the plaintiff's

wrists."), *abrogated on other grounds by, Dixon v. Richer*, 922 F.2d 1456 (10th Cir. 1991). Merely because the handcuffs caused pain was deemed insufficient. *Id.*

Mr. Marotta argues extensively in his Response that his warrantless arrest was not supported by probable cause or exigent circumstances. (*See* Doc. # 158 at pp. 4-17 of 35). The court has already dismissed Mr. Marotta's claim for arrest without probable cause (*see* Docs. # 87, # 98) and the inquiry whether the force used to arrest him was excessive is entirely independent. *Fogarty v. Gallegos*, 523 F.3d 1147, 1160 (10th Cir. 2008) (citing *Cortez v. McCauley*, 478 F.3d 1108, 1126-27 (10th Cir. 2007) ("in cases involving claims of both unlawful arrest and excessive force arising from a single encounter," the "two inquiries are separate and independent, though the evidence may overlap. The plaintiff might succeed in proving the unlawful arrest claim, the excessive force claim, both, or neither.")). Mr. Marotta's arguments regarding lack of probable cause or exigent circumstances as bases for his arrest are inapposite to his claim for excessive force.

In sum, even taking Mr. Marotta's allegations as true and viewing the evidence in the light most favorable to him, the force demonstrated by the record does not exceed what was reasonable to effectuate a lawful arrest under the circumstances. The Third Claim for Relief that Defendant Rocco-McKeel used excessive force against Mr. Marotta should not survive summary judgment. Defendant Rocco-McKeel is entitled to qualified immunity because no constitutional violation occurred as to Mr. Marotta's claim that Defendant Rocco-McKeel used excessive force in effecting his arrest.

B.    Defendant Denver

Mr. Marotta alleges that Defendant Denver "in failing to ensure that . . . [t]he Denver Police Department properly instruct, oversee and supervise its officers conduct, was therefore negligent and a party to the actions of . . . Rocco-McKeel [sic]." (*See* Doc. # 39 at ¶ 68).

A municipality or other governmental entity "can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted).  Thus, in order to hold the Defendant Denver liable under § 1983, Mr. Marotta must prove that "(1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir.1998) (citation omitted).  *See also Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996) ("To establish municipal liability, a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged.").

An unconstitutional deprivation is caused by a municipal "policy" if it results from decisions of a duly constituted legislative body or an official whose acts may fairly be said to be those of the municipality itself.  *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403-04 (1997).  *See also Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) ("For a county to be held responsible, it must have caused the harm through the execution of its own policy or custom by those whose edicts or acts may fairly be said to represent official policy.") (citation omitted).  Similarly, "custom" has come to mean an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law.  *Id.* at 404.

First, to the extent that Mr. Marotta alleges and argues that Denver was negligent (*see* Doc. # 39 at ¶ 68;  Doc. # 158 at p. 22 of 35), liability under § 1983 may not be predicated on negligence.  *See Daniels v. Williams*, 474 U.S. 327, 330-32, 106 S. Ct. 662 (1986) (allegations of mere negligence are not cognizable in any § 1983 claim, regardless of the theory or clause of the Constitution used to justify the complaint); *Woodward v. City of Worland*, 977 F.2d 1392, 1399-1400 (10th Cir. 1992) ("negligence and gross negligence

do not give rise to section 1983 liability").  Denver is entitled to summary judgment as to any allegations of negligence.

Further, without a predicate constitutional harm inflicted by an officer, Denver has no liability. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004) (citation omitted). *See also Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317-18 (10th Cir. 2002) ("We will not hold a municipality liable [for constitutional violations] when there was no underlying constitutional violation by any of its officers.") (internal quotation marks and citation omitted); *Wilson v. Meeks*, 98 F.3d 1247, 1255 (10th Cir. 1996) ("a municipality may not be held liable where there was no underlying constitutional violation by any of its officers."). Where an individual municipal officer is entitled to qualified immunity because the officer's conduct did not violate the law, "such a finding is equivalent to a decision on the merits of the plaintiff's claim." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 783 (10th Cir. 1993) (citation omitted).  The court may rely on its finding of qualified immunity of Defendant Rocco-McKeel to preclude the imposition of any municipal liability and grant summary judgment on the Third Claim for Relief as to Defendant Denver.

Neither does Mr. Marotta show by the evidence the existence of a government policy or custom that deprived him of a constitutional right.  Other than conclusory allegations and arguments in the Response, there is no evidence in the record that Mr. Marotta was injured by a municipality policy or custom.  Mr. Marotta conclusorily states  that "Denver has had a problem with the actions of its police officers for a number of years" and relies on 35 pages of newspaper articles and opinion columns.  (*See* Doc. # 158 at p. 18-19, 21-22 of 35; Doc. # 158-1 at pp. 13-40, 44-50 of 50).  Whether a party's opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that conclusory allegations without specific supporting facts have no probative value." *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (internal quotation marks and citation omitted).  The newspaper articles and opinion columns about other

13

incidents do not prove that a municipal policy or custom deprived Mr. Marotta of a constitutional right.  Further, "[c]ourts have uniformly found that newspaper articles are inadmissible hearsay when the article was not written or acknowledged by the defendant, yet is produced as proof of facts stated in that article."  *Miles v. Ramsey*, 31 F. Supp. 2d 869, 876 (D. Colo. 1998).  *See also Abruzzi Foods, Inc. v. Pasta & Cheese, Inc.* 986 F.2d 605, 606-07 (1st Cir. 1993) (Newspaper articles are not admissible evidence to prove the facts asserted therein) (citations omitted).

In his Third Claim for Relief, Mr. Marotta alleges a single incident.  A single incident generally will not give rise to liability.  *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).  "Where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued."  *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 1997) (citation omitted).  Mr. Marotta fails to allege or demonstrate that he was injured by a particular illegal course of action taken pursuant to a decision made by a person with authority to make policy decisions on behalf of Denver.  As Mr. Marotta alleges no conduct apart from that of Defendant Rocco-McKeel, he "can only be alleging *respondeat superior* liability . . ., which the Supreme Court has ruled cannot support § 1983 liability against municipalities."  *Id.*

Nor does Mr. Marotta allege or demonstrate deliberate indifference.  *See Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 407 (1997) ("a plaintiff who seeks to establish municipal liability . . . must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences.") (internal quotation marks and citation omitted); *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1188-89 (10th Cir. 2010) ("municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused") (internal quotation

marks and citations omitted).  "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."  *Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003).  There are no allegations and no admissible evidence before the court regarding Denver's failure "to ensure that . . . [t]he Denver Police Department properly instruct, oversee and supervise its officers conduct."  Thus, deliberate indifference could only be based on pure speculation and conjecture.  Mr. Marotta fails to make a showing sufficient to establish an element on which he would bear the burden of proof at trial, that is, how Denver consciously chose to disregard a risk of harm to him.

In sum, Mr. Marotta fails to allege or demonstrate sufficient facts to establish an unconstitutional custom or policy or a direct causal connection between a Denver custom or policy and the alleged constitutional violation.  Defendant Denver is entitled to summary judgment on the Third Claim for Relief.

Accordingly, IT IS RECOMMENDED that Defendants Rocco-McKeel's and the City and County of Denver's "Combined Summary Judgment Motion and Brief" (filed October 28, 2010) (Doc. # 154) be GRANTED and summary judgment on the only remaining Third Claim for Relief in the Fourth Amended Complaint (Doc. # 39) be entered in favor of Defendants Rocco-McKeel and the City and County of Denver.

## Advisement to the Parties

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583

(10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 27th day of June, 2011.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge